IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

VANESSA Y. MAKER     PLAINTIFF

vs.     Civil No. 05-1073

JO ANNE B. BARNHART,
Commissioner, Social Security Administration     DEFENDANT

## **MEMORANDUM OPINION**

**Factual and Procedural Background:**

Vanessa Y. Maker (hereinafter "Plaintiff"), has appealed the final decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner"), denying his claims for a period of disability and disability insurance benefits (hereinafter "DIB"), pursuant to *§§ 216(i) and 223* of Title II of the Social Security Act (hereinafter "the Act"), *42 U.S.C. §§ 416(i) and 423*, and for supplemental security income (hereinafter "SSI") benefits, pursuant to *§ 1602* of Title XVI*, 42 U.S.C. § 1381a*. In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *42 U.S.C. § 405(g)*.

Plaintiff's complaint was filed on August 25, 2005 (Doc. #1). Plaintiff filed her brief on November 23, 2005 (Doc. # 8). The Commissioner filed her appeal brief on December 14, 2005 (Doc. #9). The history of the administrative proceedings is contained in the respective appeal briefs, and will not be recited herein, except as is necessary.

The DIB and SSI applications now before the undersigned were protectively filed on July 5, 2002 (T. 250). Each application alleged an onset date of April 17, 2001 (T. 61, 251). The relevant time period for Plaintiff's claim for DIB benefits begins with the alleged onset

date, April 17, 2001, and ends with Plaintiff's date last insured for purposes of benefits, September 30, 2003 (T. 61, 15, 250). In order to receive DIB, an applicant has to establish that she was disabled before the expiration of her insured status. *42 U.S.C. §§ 416(i), 423(i); Battles v. Sullivan, 902 F.2d 657, 659 (8th Cir.1990); Pryor v. Heckler, 737 F.2d 1488 (8th Cir.1984).* For purposes of SSI, plaintiff had a protective filing date of July 5, 2002 (T. 250, 251, 21, 15). SSI benefits are not payable for a period prior to the application. *Cruse v. Bowen, 867 F.2d 1183, 1185 (8th Cir.1989).*

Plaintiff alleges that she is disabled due to: rheumatoid arthritis; asthma; fatigue; memory loss; loss grip strength; depression; swelling; stiff and painful joints; learning disability; inability to read; and, borderline intellectual functioning. The issue before this Court is whether the decision of the Commissioner is supported by substantial record evidence.

The Plaintiff's administrative hearing was held on February 16, 2005 (T. 273-299), after which the ALJ issued his written decision, dated May 14, 2005 (T. 14-21). On July 22, 2005, the Appeals Council denied Plaintiff's request for review (T. 5-7), thereby making the decision of the ALJ the final decision of the Commissioner. From that decision, Plaintiff appeals.

**Relevant Law:**

Our role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000); see also Craig v. Apfel 212 F.3d 433, 435-436 (8th Cir. 2000).* Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion. *See Haggard v. Apfel, 175 F.3d 591, 594 (8th Cir. 1999).* In considering whether existing evidence is substantial, we consider evidence that detracts from

the Commissioner's decision, as well as evidence that supports it. *See Prosch, 201 F.3d at 1012.* We may not reverse the Commissioner's decision merely because substantial evidence exists in the record that would have supported a contrary outcome. *See id.; Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).* Even if this Court might have weighed the evidence differently, the decision of the ALJ may not be reversed if there is enough evidence in the record to support the decision. *Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir. 1992).*

The Commissioner has established, by regulation, a five-step sequential evaluation for determining whether an individual is disabled.

The first step involves a determination of whether the claimant is involved in substantial gainful activity. *20 C.F.R. § 416.920(b).* If the claimant is so involved, benefits are denied; if not, the evaluation goes to the next step.

Step two involves a determination, based solely on the medical evidence, of whether claimant has a severe impairment or combination of impairments. *Id., § 416.920(c); see 20 C.F.R. § 416.926.* If not, benefits are denied; if so, the evaluation proceeds to the next step.

The third step involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id., § 416.920(d).* If so, benefits are awarded; if not, the evaluation continues.

Step four involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform past work. *Id., § 416.920(e).* If so, benefits are denied; if not, the evaluation continues.

The fifth step involves a determination of whether the claimant is able to perform other substantial and gainful work within the economy, given the claimant's age, education and work

AO72A
(Rev. 8/82)

experience. *Id., § 404.920(f)*. If so, benefits are denied; if not, benefits are awarded.

In addition, whenever adult claimants allege mental impairment, the application of a special technique must be followed at each level of the administrative review process. See *20 C.F.R. § 416.920a(a)*.

The Commissioner is then charged with rating the degree of functional limitation, and applying the technique to evaluate mental impairments. See *20 C.F.R. § 416.920a(d)*. Application of the technique must be documented by the Commissioner at the ALJ hearing and Appeals Council levels. See *20 C.F.R. § 416.920a(e)*. The technique is known as the psychiatric review technique (hereinafter "PRT").

**Discussion:**

A thorough review of the record indicates that the ALJ failed to properly consider all the relevant medical evidence with regard to Plaintiff's mental complaints. Specifically, the ALJ mentioned, but failed to properly analyze Plaintiff's borderline intellectual functioning. The ALJ stated:

> A consultative mental status completed on July 31, 2003, noted the claimant had complaint (sic) of arthritis and "mental problems." Test results indicated the claimant was functioning within the mild range of mental retardation. The examiner did not believe these results reflected the claimant's true abilities but borderline intelligence may be a possibility. It was noted the claimant had a driver's license and had held a job for ten years. It was determined the claimant was slow to follow instructions but, when challenged demonstrated that she could. The examiner determined the claimant could follow simple instructions and was capable of responding appropriately (Exhibit 3F).
>
> On August 27, 2003, an additional consultative mental status evaluation was completed. The claimant reported a history of rheumatoid arthritis; and, because of joint pain and stiffness of her joints, she was not able to work properly. The claimant has never been seen by a psychiatrist or admitted to psychiatric hospital. She stated that her father shot her mother when she was three years old and she

> had flashbacks of the shooting and killing of her mother. Khalid Mahmood, M.D., gave diagnosis of post traumatic stress disorder. It was noted the claimant was able to attend to her activities of daily living; get along with coworkers okay; able to drive and complete light housework. Two or more areas of significant limitations were not clearly identified and the claimants adaptive functioning was not consistent with a diagnosis of mental retardation (Exhibit 4F).
>
> The claimant testified that she is not and has not been limited by post traumatic stress disorder or anxiety. She stated that arthritis is what kept here from working. She stated she had asthma that started two or three months ago. While there was diagnosis of post traumatic stress disorder, March 1990 (Exhibit 4F), there is no indication that the claimant has ever required and/or sought any treatment of medication for post traumatic stress disorder. Therefore, it is the conclusion of the undersigned Administrative Law Judge that any symptomatology the claimant may experience associated with post traumatic stress disorder, would be less than severe within the meaning of the Regulations. Social Security Ruling 85-28 provides that an impairment is not severe if it has no more than a minimal effect on the individual's ability to do basic work functions.

(T. 16-17).

Other than the previous quote, there is no further mention of the Plaintiff's mental impairment of borderline intellectual functioning (hereinafter "BIF"), in the ALJ's decision. This is of particular note, in light of the numerous references to this issue within the record. For example, Plaintiff alleged that she had a "learning disability" and referred to herself as a "slow learner" (T. 77, 90, 202 ). Plaintiff alleged that she had only a limited ability to read and write (T. 116, 285, 286). The record establishes that Plaintiff's education was one of the 8th grade level (T. 277, 83, 89, 118) and that she made the grades of D's and F's when she was in school (T. 277). Plaintiff also received assistance in completing her Social Security Disability Supplemental Interview Outline (T. 119). Yet, the ALJ failed to discuss any of these allegations or to include them in his analysis of Plaintiff's mental impairments.

Likewise, the ALJ failed to discuss the issue of BIF with respect to the second

-5-

consultative examination performed by Khalid Mahmood, M.D., of Neuropsychiatry Associate of South Arkansas, P.A. (T. 160-163). Dr. Mahmood, a psychiatrist, stated that he estimated Plaintiff's IQ to be between 71 and 79 (T. 162). Although Kenneth B. Robinson, M.S., a licensed psychological examiner, and Charles M. Spellmann, Ph.D., a licensed psychologist, felt that Plaintiff failed to represent "herself in an honest manner" during their consultative examination of Plaintiff (T. 157), Dr Mahmood, a psychiatrist, disagreed, stating that "she appears to have been open and honest during this evaluation" (T. 163). The ALJ failed to consider Dr. Mahmood's assessment of Plaintiff's credibility (T. 14-21).

According to section V62.89, BIF is defined as an IQ ranging between 71 to 84. See American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders,* p. 740 (4th Edition, Text Revision 2000). Dr. Mahmood estimated Plaintiff's IQ to be between 71 and 79 (T. 162). Mr. Robinson and Mr. Spellmann did not believe that plaintiff was mentally retarded, but did find that "borderline intelligence, in the examiner's opinion, is a possibility" (T. 157). Therefore, although they disagreed about Plaintiff's credibility, Dr. Mahmood and the psychologists agreed that Plaintiff's IQ would most accurately be described as one which meets the definition of BIF (T. 162, 157). Yet, the ALJ failed to fully and fairly consider and analyze Plaintiff's BIF. Moreover, he failed to discuss the other evidence of record, particularly that as to Plaintiff's reading level. Said evidence is of particular importance when the Plaintiff's overall reading level and educational level is considered in combination with his IQ which is in the BIF range.

Case law indicates that BIF should be considered a severe impairment. *Hunt v. Massanari, 250 F3d 622, 625 (8th Cir. 2001); Lucy v. Chater, 113 F.3d 905, 908 (8th Cir.*

AO72A
(Rev. 8/82)

*1997).*

After careful consideration of the above record evidence, we question the ALJ's failure to mention, with respect to Plaintiff's severe impairments, much less discuss, the plaintiff's alleged diagnosis of BIF. "Although a deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency had no practical effect on the outcome of the case", *see Senne v. Apfel, 198 F. 3d 1065, 1067 (8th Cir. 1999),* the ALJ is not free to ignore medical evidence, but rather must consider the whole record." *Reeder v. Apfel, 214 F. 3d 984, 988 (8th Cir. 2000).* In the case at bar, the ALJ's complete disregard for the medical evidence submitted relative to Plaintiff's reading level and BIF is not harmless error. Plaintiff alleged disability due, in part, to conditions of learning disability/BIF from the onset of the application process. This issue is not new, and cannot properly be ignored. Clearly, the ALJ failed to consider the entire record before him. The decision indicates the ALJ failed to adequately or properly consider either plaintiff's allegations, or the medical evidence pertaining to his BIF, and/or surrounding issues. Therefore, this matter must be reversed and remanded for consideration of the entire record.

Upon remand, the Court suggests that the Commissioner consider and analyze the issue of Plaintiff's alleged lack of financial means with which to obtain treatment and/or medication. Plaintiff alleges that he experiences a lack of money to the point that he is unable to purchase medication (T. 36, 76, 95). On several occasions, Plaintiff also alleges that he has no health insurance (T. 32, 76, 95). On at least one occasion, the record also reflects that Plaintiff is the recipient of Medicaid benefits (T. 200). The record also reflects repeated allegations of a general lack of financial means by plaintiff (T. 119). Plaintiff's allegations that he has no

money with which to obtain treatment from a physician, are well documented (T. 329, 36, 112, 113, 131). Additionally, the record appears to reflect that at the time of his application for SSI, he may have been receiving food stamps (T. 263). This issue may or may not impact upon Plaintiff's lack of treatment, but upon remand, the issue should be addressed by the parties. Such analysis is essential when the ALJ relies upon an alleged failure to receive the type of treatment one would expect for a totally disabled individual. In order to discredit a Plaintiff's subjective complaints, an alleged lack of funds should be considered in order to properly consider the weight to allot a lack of treatment and/or medication.

Additionally, upon remand, the Court encourages the Commissioner to obtain the testimony of a vocational expert (hereinafter "VE"), in light of Plaintiff's alleged BIF and 3rd grade reading level. The Commissioner is urged to revisit the issue of Plaintiff's non-exertional allegations. If warranted, the use of a vocational expert at hearing would be critical, as a means of reevaluating Plaintiff's subjective allegations.

The undersigned recognizes that a claimant has the burden of proving that he does not have the residual functional capacity to perform his past relevant work. *Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998);* see *Reed v. Sullivan, 988 F.2d 812, 815 (8th Cir. 1993).* Once she has met her burden at step four of the analysis, the burden shifts to the Commissioner to prove that claimant can perform an alternative type of gainful employment. See *Beckley at 1059.* To fulfill this burden, the ALJ may refer to the medical-vocational guidelines or "grids" which are fact-based, generalized lists of available jobs for people of varying ages, educational backgrounds, and previous job experience. The "grids" also take into account the various degrees of exertional impairment. See *Beckley at 1059;* see also *Foreman v. Callahan, 122*

AO72A
(Rev. 8/82)

*F.3d 24, 25 (8th Cir. 1997)*. "Reliance on the grids is 'predicated on an individual's having an impairment which manifests itself by limitations in meeting the strength requirements of jobs' and therefore 'may not be fully applicable where the nature of an individual's impairment does not result in such limitations'" *Beckley at 1059*, (quoting *Foreman* and *20 C.F.R. Pt. 404, Subpt. P, App.2, § 200.00(e)*). When a claimant's non-exertional impairments diminish her residual functional capacity to perform the full range of work set forth in the guidelines, an ALJ must produce expert vocational testimony to establish there are jobs available in the national economy Plaintiff is able to perform, in light of his exertional and non-exertional limitations. *Sanders v. Sullivan, 983 F.2d 822, 823 (8th Cir. 1992)(citing Thompson v. Bowen, 850 F.2d 346, 349-50 (8th Cir. 1988))*. Non-exertional limitations include: difficulty functioning due to being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing; difficulty tolerating some physical feature(s) of certain work settings (e.g., dust or fumes); and, difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching. *20 C.F.R. §416.969a(c)*. Further, pain is a non-exertional limitation. *Cline v. Sullivan, 939 F.2d 560, 565 (8th Cir. 1991)*.

However, in addition to the requirement that the ALJ consider the Plaintiff's allegations of pain, he also has a statutory duty to assess the credibility of plaintiff and other witnesses. *Nelson v. Sullivan, 966 F.2d 363, 366 (8th Cir. 1992)*. The ALJ may discredit subjective complaints of pain inconsistent with the record as a whole. *Ownbey v. Shalala, 5 F.3d 342, 344 (8th Cir. 1993)*. Upon remand, the undersigned suggests that the Commissioner reevaluate the Plaintiff's non-exertional allegations in conjunction with, and in addition to the Commissioner's

AO72A
(Rev. 8/82)

other responsibilities, as noted herein. Dependant upon the ALJ's determination with respect to Plaintiff's alleged impairment of BIF, such reevaluation may or may not result in a different hypothetical question being posed to the Vocational Expert.

**Conclusion:**

For the foregoing reasons, we conclude that the decision of the ALJ should be reversed. The matter should be remanded for consideration of the evidence of Plaintiff's alleged difficulties with reading and writing, in conjunction with BIF, to include VE testimony if necessary. In light of the Court's decision to remand, the issues raised by Plaintiff are not reached.

ENTERED this 22nd day of August, 2006.

/s/Bobby E. Shepherd
Honorable Bobby E. Shepherd
United States Magistrate Judge

AO72A
(Rev. 8/82)